UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

BURBERRY LIMITED AND BURBERRY USA,    :

                         Plaintiffs,                  :         07 Civ. 3997 (PAC)

     -against-                         :         <u>ORDER</u>

DESIGNERS IMPORTS, INC., d/b/a DESIGNERS :
IMPORTS.COM USA, INC.,

                                          :

                      Defendant.             :

----------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

## NATURE OF THE CASE

On May 22, 2007, Plaintiffs Burberry Limited and Burberry USA ("Burberry" or "Plaintiffs") commenced this action against defendants Designers Imports, Inc. d/b/a Designers Imports.Com USA, Inc. ("Designers" or "Defendant"). Their Amended Complaint, filed June 5, 2007, alleges that Defendant used, sold, and advertised merchandise bearing three counterfeit Burberry registered trademarks: the Burberry name, the Burberry Check design, and the Burberry "Equestrian Knight" on horseback device.

Burberry brings claims of trademark counterfeiting and infringement pursuant to 15 U.S.C. § 1114(1)(a); false designation of origin and trademark dilution pursuant to 15 U.S.C. § 1125(a)(1)(A); common law claims for breach of contract and unjust enrichment; trademark infringement and unfair competition in violation of New York common law; and trademark dilution pursuant to 15 U.S.C. § 1125(c); likelihood of

injury to business reputation pursuant to New York General Law Section 360-1; and deceptive acts and practices pursuant to New York General Law Section 349.

Burberry seeks statutory damages and attorneys' fees and costs, and various forms of injunctive relief, including a permanent injunction barring Defendant from selling Burberry-branded merchandise.

Defendant claims half-heartedly that it did not sell counterfeit Burberry-branded merchandise, but its real argument is that it was an innocent infringer whose actions were not willful and were not the product of willful blindness. Defendant also claims that Burberry has not come to Court with clean hands and so Burberry is not entitled to damages, attorney's fees or costs.

## WAIVER OF JURY AND TRIAL

The parties waived jury trial, and the Court conducted a bench trial on September 14 and 15, 2009. The Court heard the testimony of witnesses from Burberry and Defendant and considered the exhibits received in evidence, as well as designated portions of depositions. The parties stipulated to the following facts in the jointly-submitted pretrial order:

1.      Plaintiff Burberry Limited is a corporation duly organized and existing under the laws of the United Kingdom with a principal place of business at Horseferry House, Horseferry Road, London SWIP 2AW, United Kingdom.

2.      Plaintiff Burberry USA, a sister company of Plaintiff Burberry Limited, is located at 444 Madison Avenue, New York, NY 10022.  Burberry USA enforces in North America the trademarks owned by Burberry Limited.  Burberry Limited, Burberry USA, and their predecessor are herein referred to collectively as "Burberry."

3.      Burberry has continuously used the BURBERRY® word mark in commerce since 1856.

4.      Burberry introduced the BURBERRY CHECK trademark in its original distinctive red, camel, black and white check design in the 1920's.  Burberry has continuously used the BURBERRY CHECK in both the original colors and other distinctive color combinations for over three-quarters of a century.

5.      Burberry has continuously used the Burberry equestrian knight on horseback (the "EQUESTRIAN KNIGHT DESIGN") on numerous products since 1901.

6.      Burberry USA is the exclusive importer and distributor in the United States of BURBERRY® merchandise that bears the BURBERRY® mark, the BURBERRY CHECK, and/or the EQUESTRIAN KNIGHT DESIGN (collectively, the "Burberry Trademarks").  Burberry has used the Burberry Trademarks on, and in connection with, the advertising and sale of Burberry's products, including, but not limited to, scarves, swimwear, coats, jackets, polo shirts, handbags, and t-shirts in interstate and intrastate commerce, including commerce in the State of New York and in this judicial district.

7.    Burberry Limited owns the following valid and enforceable U.S. trademark registrations for the BURBERRY® word mark, among others:  U.S. Reg. No. 260,843; U.S. Reg. No. 510,077; U.S. Reg. No. 1,133,122; and U.S. Reg. No. 3,202,484. These registrations are incontestable pursuant to 15 U.S.C. § 1065.

8.    The BURBERRY word mark is famous within the meaning of 15 U.S.C. § 1125(c).

9.    The BURBERRY word mark was famous within the meaning of 15 U.S.C. § 1125(c) prior to Defendant's use and/or sale of the items in dispute in this litigation.

10.    Burberry Limited owns the following valid and enforceable U.S. trademark registrations for the BURBERRY CHECK trademark, among others:  U.S. Reg. No. 1,241,222; U.S. Reg. No. 2,732,617; and U.S. Reg. No. 2,022,789.  These restrictions are incontestable pursuant to 15 U.S.C. § 1065.

11.    The BURBERRY CHECK trademark is famous within the meaning of 15 U.S.C. § 1125(c).

12.    The BURBERRY CHECK trademark was famous within the meaning of 15 U.S.C. § 1125(c) prior to Defendant's use and/or sale of the items in dispute in this litigation.

13.    Burberry Limited owns the following valid and enforceable U.S. trademark registrations for the EQUESTRIAN KNIGHT DESIGN trademark, among others:  U.S. Reg. No. 863,179; and U.S. Reg. No. 2,512,119.  These registrations are incontestable pursuant to 15 U.S.C. § 1065.

14.     The EQUESTRIAN KNIGHT DESIGN trademark is famous within the meaning of 15 U.S.C. § 1125(c).

15.     The EQUESTRIAN KNIGHT DESIGN trademark was famous within the meaning of 15 U.S.C. § 1125 (c) prior to Defendant's use and/or sale of the items in dispute in this litigation.

16.     Defendant Designers Imports, Inc. d/b/a Designers Imports.com USA, Inc. is a New York corporation located at 11 Lake Street, No. 201, Monroe, New York 10950 and/or 1117 Route 17M, Suite 2, Monroe, New York 10950.

17.     Since at least as early as 2003, Designers has continuously sold apparel and accessories online, including at its website located at www.designersimports.com.

18.     Asher Horowitz is the owner and Chief Operating Officer of Designers.

19.     Mr. Horowitz is the only officer of Designers, its only Director, and its sole shareholder.

20.     Mr. Horowitz sets the price for the goods that his business sells. He also decides what will be displayed on www.designersimports.com.

21.     Mr. Horowitz sets his own salary and makes sure that bills at the company are paid.

22.     Designers cannot allocate a portion of its expenses to its sale of Burberry-branded items.

23.     Mr. Horowitz was aware of BURBERRY products before he founded Designers.

24.     Since at least as early as 2003, Designers has sold or offered for sale products that display one or more of the Burberry Trademarks that were not purchased directly from Burberry or one of its authorized retailers.

25.     Designers has purchased keywords containing the BURBERRY trademark from Google's Pay Per Click program such as "Burberry," "Burberry scarf or scarves, "Burberry jacket," and "Burberry handbag." Designers purchased similar advertising from Yahoo, including the keyword "Burberry scarf." When potential customers shop online for Burberry products, they are automatically referred to the Designers website.

26.     Mr. Horowitz is the only person who decides what Burberry-branded goods Designers will sell on its website.

27.     Designers' suppliers include "Moda Oggi." Moda Oggi has since been sued as a third party by Burberry for selling counterfeit Burberry-branded products, and Burberry prevailed on summary judgment against Moda Oggi on this and related claims on June 10, 2009. See Burberry Limited, et al. v. Euro Moda, Inc., et al., Civil Docket for Case No. 1:08-cv-05781-CM, 2009 WL 1675080 (S.D.N.Y. June 10, 2009);

28.     On April 12, 2005, Burberry and Designers entered into a settlement agreement ("Settlement Agreement") regarding Designers' sales of items that Burberry contented were counterfeit. The agreement was amended on May 4, 2005. The agreement was received in evidence (Ex. 185).

29.     After the agreement was signed, Burberry bought products from Defendant to determine whether it was complying with the agreement.

30.     On February 23, 2006, Burberry's attorney sent a letter to Defendant's attorney contending that Designers sold two counterfeit scarves that infringed the

Burberry Trademarks. Designers' lawyer responded that the goods were purchased from a Burberry store and that the goods were not counterfeit.

31. On March 8, 2006, Burberry's lawyer sent another letter to Defendant's counsel contending that Designers sold a counterfeit bikini and three counterfeit polo shirts that infringed the Burberry Trademarks. Designers' counsel responded (Ex. 177).

32. On May 9, 2007, Burberry's attorney sent a letter to Defendant's counsel contending that Designers sold two counterfeit quilted coats and two counterfeit white shirts with check trim that infringed the Burberry Trademarks. Designers' counsel responded (Ex. 178).

33. On July 9, 2007, Burberry's attorney sent a letter to Defendant's counsel contending that Designers sold two counterfeit scarves that infringed the Burberry Trademarks. Defendant's counsel received this letter (Ex. 179).

34. Investigators acting on behalf of Burberry purchased the following Burberry-branded articles of clothing from Designers' website, www.designersimports.com (the "Purchased Goods"):

- One bikini with check trim purchased on March 1, 2006;

- Three polo shirts, one each in white, black, and gray purchased on March 1, 2006;

- One "Constance" padded jacket purchased on February 7, 2007;

- A second padded jacket, in the longer "Langford" style, purchased on April 7, 2007;

- One cashmere "Baby Blue Happy Scarf" and one cashmere "Classic Plaid Scarf," purchased on June 9, 2007;

- One "Nova Check Cashmere Scarf" purchased on October 11, 2007;

- One cashmere Cream-White Check "Plaid Mini Scarf" purchased on April 7, 2008; and

- Two white t-shirts with checked trim purchased on February 7, 2007 and April 7, 2007.

35.     Designers shipped the Purchased Goods to Burberry's investigators.

36.     Burberry's investigators shipped the Purchased Goods to Burberry at its New York offices.

37.     An employee in Burberry's New York office received the Purchased Goods.

38.     On June 28, 2005, Kate McKinnon, an Investigator for Abacus Security, sent three (3) Burberry-branded handbags that had been purchased from Designers to Burberry's New York Office.  Burberry determined that these three (3) handbags were not counterfeit, but rather genuine.

39.     On December 15, 2005, Ayodele Akingbade, an Investigator for Abacus Security, sent three (3) Burberry-branded handbags that had been purchased from Designers to Burberry's New York Office.  Burberry determined that these three (3) handbags were not counterfeit, but rather genuine.

## ISSUES AT TRIAL AND FINDINGS OF FACT

Defendant stipulated to the counterfeit nature of substantially all of the products that Burberry found to be counterfeit, except for two scarves, purchased in December, 2005. Accordingly, Burberry had two goals at trial: (a) to establish that Defendants were the source of the counterfeit products; and (b) to establish that Defendant's violations were

willful or the result of willful blindness.  Defendant's goal was to minimize its damages to the extent possible.

**a. Proof Regarding the Source of Products**

Burberry engaged a series of investigators to buy certain products from Defendant and submit these products, along with the packing slips, invoices, and shipping information, to Burberry (Trial Tr. 95-100).  Burberry would then attach a security tag bearing a unique number to these products, photograph the products, and prepare a chain of custody form (Trial Tr. 95-96).  The chain of custody form listed the source of the product, the date of receipt, and the date the recipient sent the product to another party (Trial Tr. 96).  For everything but the most obvious counterfeits, Burberry would ship the suspect products to its London office, where Burberry's expert would examine them and determine whether a product was genuine or counterfeit (Trial Tr. 98).

Burberry submitted twenty products for their expert to review (Trial Tr. 41, 46).  Burberry's expert found that six products (all handbags) were genuine but that the balance of fourteen were counterfeit (Trial Tr. 36, 42, 44).  As previously indicated, Defendant does not contest the counterfeit nature of twelve of the fourteen products.

Defendant does contend, however, that two of the Burberry expert's counterfeit determinations were erroneous: the determinations relating to a blue "happy" scarf and a check cashmere scarf, both purchased in December, 2005 (Trial Tr. 248-52).  Mr. Horowitz testified that he suspected that J. Burke was a possible investigator for Burberry

when he saw Burke's name on an order for two scarves and a coat (Trial Tr. 248, 271-72).  While Defendant had Burberry scarves in stock at the time, Designers was aware that Burberry was monitoring its compliance with the Settlement Agreement, so Mr. Horowitz enlisted his wife to buy two Burberry scarves from a Burberry store in Boca Raton, Florida (Trial Tr. 249).  Mr. Horowitz filled Mr. Burke's order with the two scarves his wife had purchased (Trial Tr. 249-51).  Burberry tested these scarves and found them to be counterfeit (Trial Tr. 251-52).  Mr. Horowitz challenges Burberry's determinations (Trial Tr. 251-52).

Since Burberry's findings on the two scarves were erroneous, Defendant argues that Burberry's twelve other determinations of counterfeit must be wrong as well. Defendant's argument is *falsus in uno; falsus in omnibus*; but that is inconsistent with Defendant's stipulation that it had no factual basis for challenging Burberry's other determinations.  Even if Burberry's determinations regarding the two scarves were incorrect, moreover, this would not impair the validity of Burberry's separate determinations made at different times, on twelve different products, that the Defendant's goods were in fact counterfeit.  Finally, Defendant did not establish that the determinations were wrong: Defendant cannot prove that it sent Mr. Burke the two authentic Burberry scarves that Mrs. Horowitz purchased in the Boca Raton Burberry store.

Based on the routine procedures Burberry took to protect its trademarks, and its carefully devised and methodically applied procedures to test the authenticity of Burberry-branded

merchandise, the Court finds that Designers sold the following twelve items of counterfeit merchandise to Burberry:

| Date of Purchase | Goods Sold |
| --- | --- |
| March 1, 2006 | 1. Bikini |
| | 2. White Polo Shirt |
| | 3. Black Polo Shirt |
| | 4. Gray Polo Shirt |
| February 7, 2007 | 5. "Constance" Jacket |
| | 6. White Shirt – Checked Trim |
| April 7, 2007 | 7. Quilted Langford Coat |
| | 8. White Shirt – Checked Trim |
| | 9. Cashmere Cream-White Check Mini Scarf |
| June 9, 2007 | 10. Cashmere Baby Blue Happy Scarf |
| | 11. Cashmere Classic Plaid Scarf |
| October 11, 2007 | 12. Nova Check Cashmere Scarf |

**b. Proof of Defendant's Willfulness or Willful Blindness**

Burberry has demonstrated Defendant's willfulness based on its conduct spanning several years during which Defendant repeatedly sold a variety of counterfeit Burberry merchandise.  In addition to the April 2005 Settlement Agreement (Ex. 185), Burberry submitted a series of letters and emails proving that it repeatedly placed Defendant on notice that Defendant was violating the trademark law by selling counterfeit Burberry merchandise (Ex. 177-79).  Additionally, Mr. Horowitz testified that, even after the Settlement Agreement, he occasionally purchased Burberry items from anonymous internet vendors and from vendors whose last names he did not know (Trial Tr. 282-84).  Mr. Horowitz also testified that he did not always question his vendors about the source of their Burberry merchandise (Trial Tr. 284-85); that he used suppliers whose goods had been seized by the Customs Department (Trial Tr. 286-87; 289-90; 292-93); and that he purchased a substantial amount of Burberry goods from Moda Oggi, a known seller of counterfeit merchandise (Trial Tr. 295).  In fact, the United States Customs Service repeatedly notified Defendant that it was seizing Burberry-branded goods addressed to Designers because the goods were counterfeit (Exs. 223-25; 302-05).

Defendant introduced testimony, however, that mitigates the willfulness of his trademark violations.  Mr. Horowitz testified, for example, that he often traveled overseas to purchase branded merchandise (Trial Tr. 242); that he visited the offices of his suppliers (Trial Tr. 242); that, following the Settlement Agreement, he ceased selling items that Burberry claimed were counterfeit (Trial Tr. 248); that he generally complied with his obligations under the Settlement Agreement (Trial Tr. 247-48; 300-01); that all the

Burberry items he currently sells originated in Burberry outlet centers (Trial Tr. 254); that all the non-Burberry branded produces he recently added to his website originated with authorized distributors or manufacturers (Trial Tr. 257); that he made numerous, sincere efforts to authenticate his merchandise before offering them for sale (Trial Tr. 277-82; 288-89; 292); and that he was unaware that Moda Oggi was a seller of counterfeit items (Trial Tr. 295). Defendant also introduced a supplier's deposition testimony, stating that Mr. Horowitz insisted on buying only authentic goods (Trial Tr. 304-06).

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction under 28 U.S.C. § 1367(a).

### Trademark Counterfeiting and Infringement under the Lanham Act (Counts I and II)

Burberry alleges that Defendant committed trademark counterfeiting and infringement under section 32(1)(a) of the Lanham Act through its unauthorized use of the Burberry trademarks. Section 32(1)(a) of the Lanham Act provides that a person shall be civilly liable if, without the registrant's consent, such person:

> use[s] in commerce any reproduction, counterfeit, or copy or colorable limitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a).

Section 45 of the Lanham Act, 15 U.S.C. § 1127, defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."

Defendant is liable for trademark counterfeiting and infringement if Burberry establishes that: (1) Burberry had valid registered marks entitled to protection under the Lanham Act; and (2) Defendant used a similar mark in commerce in a way that would likely cause confusion among the relevant consuming public. Cartier Int'l B.V. v. Ben-Menachem, 2008 WL 64005, at *10 (S.D.N.Y. Jan. 3, 2008).

Burberry has met its burden. The parties stipulated that Burberry had valid registered marks entitled to protection under the Lanham Act. These marks include the BURBERRY® word mark; the BURBERRY CHECK mark; and the EQUESTRIAN KNIGHT DESIGN. Defendant has offered for sale and has sold merchandise displaying spurious designations that are identical to, or substantially indistinguishable from, Burberry's famous, registered trademarks on goods for which Burberry trademarks are registered, including: a bikini; a jacket; a coat; five shirts; and four scarves. Defendant intentionally used these spurious designations without authorization and in connection with the advertising, sale, offering for sale and distribution of goods for its own financial gain.

Defendant's use of the Burberry trademarks is likely to cause confusion among the relevant consuming public. To determine whether confusion is likely to arise, a court need only determine that the items at issue are counterfeit and that Defendant distributed, offered for sale, and sold the items. Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F.Supp.2d 284, 287 (S.D.N.Y. 2003).

The Court finds that Defendant is liable for trademark counterfeiting and infringement.

**False Designation of Origin, Trade Name, Infringement, and False Description and Representation under the Lanham Act (Count III)**

The Court also finds Defendant liable under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A):

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, terms, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to "deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person….

Having established its claim for federal trademark infringement under Section 32, it is unnecessary for the plaintiff to make any additional showing to satisfy Section 43(a). Russian Kurier, Inc. v. Russian Am. Kurier, Inc., 899 F.Supp. 1204, 1208 (S.D.N.Y. 1995).

**Trademark Dilution under the Lanham Act and Dilution and Likelihood of Injury under Section 360-1 of N.Y. Gen. Bus. Law (Counts IV and VI)[1]**

A trademark holder claiming dilution under 15 U.S.C. § 1125(c) must show that: (1) the senior mark is famous; (2) the defendants are making commercial use of the junior mark in commerce (under the Federal Trademark Dilution Act, the "FTDA") or use of the junior mark in commerce (under the Trademark Dilution Revision Act of 2006, the "TDRA"); (3) defendant's use of the junior mark began after the senior mark became famous; and (4) actual dilution (under the FTDA) or a likelihood of dilution (under the TDRA). See e.g., Malletier v. Dooney & Bourke, Inc., 561 F.Supp.2d 368, 380-81 (S.D.N.Y. 2008).

Plaintiffs have met their burden on their trademark dilution claim, based on the parties' stipulations: the fame of Burberry's mark; Defendant's commercial use of Burberry's mark in commerce; and Defendant's use of Burberry's mark subsequent to Burberry's mark becoming famous. Further, Burberry has established a presumption of actual and likely dilution by showing that Defendant's used counterfeit marks that were identical to the Burberry trademarks. See Savin Corp. v. Savin Corp., 391 F.3d 439, 452-53 (2d Cir. 2005).

---

[1] The Court will analyze Burberry's federal and state law dilution claims together. The New York State anti-dilution statute, N.Y. Gen. Bus. L. § 360-1, and the Federal Trademark Dilution Act, the federal anti-dilution statute in effect prior to October 6, 2006, are alike. Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 119 (2d Cir. 2006). This analysis is essentially unchanged under the Trademark Dilution Revision Act of 2006, effective October 6. 2006. Tiffany (NJ) Inc. v. eBay, Inc., 576 F.Supp2d 463, 523 (S.D.N.Y. 2008). Some courts have held that the New York State statute provides greater protection against dilution than the TDRA. See GMA Accessories, 2008 WL 591803, at *11. But the Court need not engage in a separate analysis for Burberry's New York State claims because the Court concludes that Burberry's dilution claim succeeds under the more exacting FDTA standard.

Dilution by tarnishment reflects an "association arising from the similarity between a mark or a trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. §1125(c). Defendant tarnished Burberry's marks by using them on inferior products (Tr. 18:23-22:19; 36:17-37:4). See e.g., Hormel Foods v. Jim Henson Products, Inc. 73 F.3d 497, 507 (2d Cir. 1996) (a trademark may be tarnished when linked to products of shoddy quality). Accordingly, the Court finds Defendant liable for trademark dilution by tarnishment under both the FTDA and the TDRA.

Since Burberry has established that (1) the Burberry trademarks are famous, and (2) there is a likelihood of dilution, Defendants are also liable under New York State Business Law § 360-1 for dilution and likelihood of injury to business reputation. See Malletier, 561 F.Supp.2d at 381.

**Deceptive Acts and Practices under New York Law (Count V)**

New York General Business Law § 349 forbids "[d]eceptive acts and practices." Burberry has satisfied the three-factor test for establishing a § 349 violation: (1) that Defendant engaged in a consumer-oriented act (sale of Burberry-branded merchandise); (2) that was misleading in a material way (the products were counterfeit); and (3) Burberry suffered injury. See Vitabiotics, Ltd. V. Krupka, 606 F.Supp. 779, 785 (E.D.N.Y. 1984) (sale of infringing products creates presumption of injury under Section 349). Accordingly, the Court finds Defendant liable under Section 349 of the New York General Business Law.

## Trademark Infringement and Unfair Competition under New York Common Law (Counts VII and VIII)

The New York common law on trademark infringement and unfair competition claims mirrors the Lanham Act. To prevail on its common law claim of trademark infringement, Burberry need only present evidence sufficient to establish a violation of section 32(1) of the Lanham Act. Standard & Poor's Corp., Inc. v. Commodity Exch., Inc., 683 F.2d 704, 708 (2d Cir. 1982). Since Burberry has established liability under the Lanham Act, it has also established liability under New York's common law of trademark infringement.


The same principle is applicable to the New York State unfair competition claim. A claim under the Lanham Act, coupled with a showing of bad faith or intent, establishes a claim for unfair competition. Girl Scouts of U.S.A. v. Bantam Doubleday Dell Publ'g Group, Inc., 808 F.Supp. 1112, 1131 (S.D.N.Y. 1992). Use of a counterfeit mark creates a presumption of bad faith under New York law. Philip Morris U.S.A., Inc. v. Filizardo, 2004 WL 1375277 (S.D.N.Y. June 18, 2004), at *6. Accordingly, Burberry's evidence of Defendant's sale of counterfeit Burberry-branded merchandise creates a presumption of bad faith, satisfying the elements of Burberry's common law unfair competition claim.


## Common Law Breach of Contract (Count IX)

The April 12, 2005 Settlement Agreement is governed by New York law (Ex. 185 ¶11). The parties do not dispute the existence or validity of the April 12, 2005 Settlement Agreement, nor does Defendant argue that Burberry failed to perform under the Settlement Agreement.

Burberry has also established Defendant's non-performance. Paragraph 2.6 of the Settlement Agreement provides that Defendant will not "knowingly infringe or dilute Burberry's trademarks." The same paragraph defines "knowingly" as occurring when Defendant "knows or should have known that their actions violate Burberry's trademark rights."

The Court has already found that Defendant committed trademark infringement. It now finds that the same infringing conduct constituted a breach of contract. <u>See e.g., Heisman Trophy Trust v. Smack Apparel Co.</u>, 595 F.Supp.2d 320, 329 (S.D.N.Y. 2009) (evidence of trademark infringement shows the likelihood of success on breach of settlement agreement claim).

Regarding damages, Section 12 of the Settlement Agreement contains a liquidated damages clause providing that Defendant is obligated to pay "$1,500.00 per day for each day a breach occurs."

Defendant's breach of contract liability, however, is limited to violations that occurred prior to Burberry's commencement of the lawsuit. Under New York's doctrine of the election of remedies, when a party breaches a contract, the adverse party has to make an election: to either treat the entire contract as breached and pursue damages for the breach or, alternatively, to reject the proposed breach, demand performance, and continue to

treat the contract as valid. See e.g., Inter-Power of New York Inc. v. Niagara Mohawk Power Corp., 259 A.D.2d 932, 934 (3d Dept. 1999).

Accordingly, Defendant is liable only for trademark violations occurring prior to May 22, 2007, the date Burberry commenced this lawsuit.  These pre-commencement violations include nine of the twelve items: the four items Defendant sold on March 1, 2006 (Bikini; White Polo Shirt; Black Polo Shirt; and Gray Polo Shirt); the two items Defendant sold on February 7, 2007 (the "Constance" Jacket and the White Shirt – Checked Trim); and the three items Defendant sold on April 7, 2007 (the Quilted Langford Coat; the White Shirt-Checked Trim; and the Cashmere Cream-White Check Mini Scarf).

**Common Law Unjust Enrichment (Count X)**

The Court dismisses Burberry's unjust enrichment claim because a party cannot prevail on remedies under both contract and quasi-contract theories. See e.g., Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 388 (1987) ("quasi contract" only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment).

## Defendant's Willfulness or Willful Blindess

The Court finds that Defendant acted willfully in selling twelve counterfeit Burberry-branded items of merchandise. Actual knowledge is not necessary for willful trademark infringement liability; rather, "[i]nfringement is willful when the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." <u>Hermes Int'l v. Kiernan</u>, 2008 WL 4163208, at *3 (E.D.N.Y. Aug. 28, 2008).

Here, Burberry established Defendant's willfulness by demonstrating a course of conduct spanning several years during which Defendant repeatedly sold a variety of counterfeit Burberry merchandise. Defendant repeatedly and knowingly violated its obligations under the Settlement Agreement. Defendant willfully failed to investigate the bona fides of Burberry-branded goods it purchased for sale and by failing to implement procedural safeguards against the sale of counterfeit goods. When Defendant became aware that Burberry, through its agent J. Burke, placed a test order for Burberry items, Defendant did not fill the order from its own inventory, but rather sent Mrs. Horowitz to an authorized Burberry store to purchase items to fill the order. This is further evidence that Defendant was not confident in the authenticity of its own Burberry-branded inventory. Accordingly, the Court finds that Defendant's trademark violations were willful.

Defendant, however, has introduced some evidence of compliance with the terms of the Settlement Agreement and of some level of diligence. These factors mitigate the degree of Defendant's willfulness.

# DAMAGES

The Court asked the parties to provide summations of their damages. Burberry claimed

statutory damages under 15 U.S.C. § 1117(c) in the amount of $6.5 million (Dkt. #30, at

2, 10). Defendants argued that its maximum exposure is $18,000 (Dkt. #32 at 13).


Section 15 U.S.C. § 1117(c) provides:


> In a case involving the use of a counterfeit mark (as defined in section
> 1116(d) of this title) in connection with the sale, offering for sale, or
> distribution of goods or services, the plaintiff may elect, at any time before
> final judgment is rendered by the trial court, to recover, instead of actual
> damages and profits under subsection (a) of this section, an award of
> statutory damages for any such use in connection with the sale, offering
> for sale, or distribution of goods or services in the amount of--
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per
> type of goods or services sold, offered for sale, or distributed, as the court
> considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not
> more than $2,000,000 per counterfeit mark per type of goods or services
> sold, offered for sale, or distributed, as the court considers just.


15 U.S.C. § 1117(c) (2004) (amended 2008).[2]


In determining the amount of statutory damages, courts consider several factors,

including:

---

[2] Prior to October 13, 2008, the minimum for § 1117(c)(1) was $500 and the maximum was $1,00,000; and
the maximum for § 1117(c)(2) was $1,000,000. <u>See</u> Prioritizing Resources and Organization for
Intellectual Property Act of 2008, Title I, sec. 104, § 1117, 122 Stat 4256, 4259 (Oct. 13, 2008).
Defendant's sales of counterfeit Burberry items occurred prior to October 13, 2008. Accordingly, the
Court applies the pre-amendment statutory amounts. <u>See e.g., Century 21 Real Estate LLC v. Bercosa
Corp.</u>, --- F.Supp.2d ---, 2009 WL 3111759, at *12n.9 (E.D.N.Y. Sept. 18, 2009).

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc. 2006 WL 728407, at *6

(S.D.N.Y. March 21, 2006).

Several of these factors support a substantial award.  Defendant has acted willfully in selling twelve counterfeit Burberry-branded items of merchandise.  Burberry's trademarks are highly valuable and of worldwide renown.  The goal of deterring others from similar conduct requires a significant award. Louis Vuitton Malletier, S.A. v. LY USA, 2008 WL 5637161, at *2 (S.D.N.Y. Oct. 3, 2008).  A large award is also necessary because the Settlement Agreement failed to deter Defendant and because of Defendant's ability to reach a vast customer base through internet advertising.  See e.g., Rolex Watch U.S.A., Inc. v. Jones, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002).[3]

There are other factors which mitigate the degree of Defendant's willfulness.  Defendant cooperated in providing financial records.  These records indicate that Defendant reported sales of $4,276,581 for Burberry-branded merchandise sold between March 29, 2005 and June 26, 2008 (Ex. 308).  Defendant also reported net income of $1,158,295 for scarves,

---

[3] Plaintiffs' Ex. 300 indicates that between September 13, 2003 and June 11, 2008, Designer's Burberry advertising in Google had been clicked 1,021,744 times.

shorts, jackets, and coats sold between March 29, 2005 and May 13, 2008 (Ex. 220).[4]

Burberry-branded merchandise, however, represented only a percentage of Defendant's

entire business, and not all Burberry-branded items were counterfeit.[5]  Finally, few courts

have awarded maximum statutory damages on the basis of a per mark, per type of good

calculation. <u>See e.g., Gucci Am., Inc. v. MyReplicaHandbag.com</u>, 2008 WL 512789, at

*5 (S.D.N.Y. Feb. 26, 2008) (collecting cases to note that "[M]ost judges have issued

awards well below the maximum available on the basis of per-mark-per-type-of-goods").


Having considered all relevant factors, the Court awards Burberry statutory damages in

the amount of $1,500,000.  This amount represents $100,000 per mark per types of goods

sold.  Specifically, Defendant infringed three of Burberry's registered trademarks (the

Burberry name, the Burberry Check design, and the Burberry "Equestrian Knight" on

horseback device) and sold five types of counterfeit Burberry-branded merchandise

(Bikini; Shirts; Jacket; Coat; and Scarves).  An award of $100,000 per mark per type of

good sold totals $1,500,000.


Since there was willful infringement and no "extenuating circumstances," the Court

allows Burberry attorneys' fees and costs, as required by 15 U.S.C. § 1117(b). <u>Sara Lee</u>

<u>Corp. v. Bags of New York, Inc.</u>, 36 F.Supp.2d 161, 170 (S.D.N.Y. 1999).  Burberry's

counsel should submit an itemized fee application, supported by time-sheets, along with a

---

[4] Plaintiffs' Ex. 220 was not introduced at trial.  After the trial, however, on September 25, 2009, the Court reopened the trial record to admit this exhibit into evidence (Dkt. #28).

[5] Plaintiffs' Ex. 308 indicates that Burberry-branded merchandise represents the following percentages of Designer's overall sales: 65.13% between March 29, 2005 and December 31, 2005; 34.44% between January 1, 2006 and December 31, 2006; 21.35% between January 1, 2007 and December 31, 2007; and 6.97% between January 1, 2008 and June 26, 2008.

statement of the nature of the work performed, as well as explanations of each attorney's expertise and any other relevant factors. See e.g., Pressman v. Estate of Steinworth, 886 F.Supp. 365, 367 (S.D.N.Y. 1999).


**INJUNCTIVE RELIEF**

Section 34(a) of the Lanham Act provides for injunctive relief to prevent trademark violations "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a).  Courts may grant permanent injunctions where a plaintiff demonstrates actual success on the merits and irreparable harm. Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F.Supp.2d at 290.  As indicated, Burberry has established success on the merits.  Burberry has also established irreparable harm by establishing a likelihood of confusion. See Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997).  Accordingly, the Court permanently enjoins Defendant from infringing on any Burberry trademarks.


The Court denies Burberry's request to completely bar Defendant from selling Burberry goods.  Defendant may continue to participate in the secondary market provided Defendant sells only legitimate products.  In light of Defendant's continuing pattern of trademark infringement, however, any further violation of the injunction will result in Defendant's being permanently enjoined from selling, offering for sale, advertising, or distributing any Burberry-branded merchandise.

## CONCLUSION

The foregoing constitutes the Court's findings of fact and conclusions of law. Defendant is liable to Burberry for a total of $1,500,000 in statutory damages. Defendant is further liable for Burberry's reasonable attorneys' fees and costs, in an amount to be determined by the Court, after Burberry's counsel submits contemporaneous time records, reflecting the work done in this litigation. Finally, Defendant is hereby permanently enjoined from infringing on any Burberry trademarks. If Defendant violates Burberry's trademarks in the future, then Defendant will automatically be permanently enjoined from selling, offering for sale, advertising, or distributing any Burberry-branded merchandise.

Plaintiff is directed to submit a proposed order of judgment on 10 days notice.

Dated: New York, New York
January 19, 2010

SO ORDERED

PAUL A. CROTTY
United States District Judge